DECISION.
{¶ 1} This action stemmed from a lengthy dispute between the estates of a husband and wife who had died within months of each other. The trial court rendered judgment in favor of the wife's estate on most of its claims, divided items of personal property between the estates, and ordered the husband's estate to pay attorney fees for the wife's estate. The husband's estate now appeals.
 Background {¶ 2} Nevada and Chester Baldock married in May 1986. It was the second marriage for both. Both had adult children from their previous marriages.
 {¶ 3} Before their wedding, Nevada and Chester (because Nevada and Chester Baldock shared the same surname, we refer to them by their first names) had met with attorney Maury M. Tepper. Following their meeting, Tepper sent a letter to Chester in March 1986, enclosing "the [p]renuptial [a]greement which we discussed." Tepper advised Chester to have Nevada review the agreement and suggested that she might want her attorney to review it as well. Tepper advised Chester that if the document was satisfactory, Chester and Nevada should sign it in the presence of a notary public.
 {¶ 4} Following Chester's death in February 2002, his daughter, Evelyn Carole Cooper, became the executor of his estate. Following Nevada's death six months later, her daughter, Mary Ann Gearheart, became the executor of her estate.
 {¶ 5} On behalf of Nevada's estate, Gearheart submitted a proof of claim against Chester's estate for the $40,000 family allowance provided by R.C. 2106.13. Cooper, acting as executor of Chester's estate, rejected the claim, claiming that it was precluded by the prenuptial agreement between Nevada and Chester.
 Declaratory-Judgment Action {¶ 6} Gearheart filed a complaint in the probate division of the common pleas court, seeking a declaratory judgment as to the validity of the purported prenuptial agreement and as to whether Nevada's estate was entitled to the statutory allowance.
 {¶ 7} Cooper filed a counterclaim seeking (1) a declaratory judgment as to the validity of the prenuptial agreement and as to ownership of certain personal property, (2) reimbursement for expenses associated with Nevada's life estate in Chester's home following his death, and (3) damages. Cooper filed a third-party complaint against Tepper, alleging that he was liable should the prenuptial agreement be determined to be invalid.
 {¶ 8} In November 2003, the probate court determined that it did not have jurisdiction over Cooper's claim against Tepper, so the court transferred the entire case to the general division of the common pleas court, despite Gearheart's objection. In August 2004, Cooper dismissed her third-party complaint against Tepper. The remaining matters, which included Gearheart's complaint against Cooper and Cooper's counterclaims, remained in the general division.
 The Trial {¶ 9} The parties tried the case to the bench in May 2005. Gearheart and Cooper testified and jointly introduced into evidence two identical documents. Each document was entitled "Agreement" and consisted of three pages. The first line of each document stated, "This Agreement made and entered into this___ day of ___, 1986 by and between CHESTER BALDOCK, of Cincinnati, Ohio, and NEVADA BURDETTE, of Cincinnati, Ohio, in contemplation and consideration of their forthcoming marriage." No day or month had been entered on the lines provided. Nevada's previous surname, Burdett, had been misspelled on both documents.
 {¶ 10} The third page of each document contained signature lines for Chester and Nevada. Again, Nevada's previous surname had been misspelled. But a line had been drawn through a letter in her last name to correct the misspelling on each document. Nevada's and Chester's original signatures appeared above their typewritten names.
 {¶ 11} At the conclusion of the trial, the court rendered judgment in favor of Gearheart on her claim for the statutory family allowance and on each of Cooper's counterclaims. The court further determined the estates' ownership of numerous items of personal property.
 {¶ 12} Following the trial court's judgment in her favor, Gearheart filed a motion for attorney fees against Cooper, pursuant to R.C.2323.51. The trial court granted the motion upon a finding that Cooper had engaged in frivolous conduct and awarded Gearheart $20,648.75 for attorney fees.
 The Appeal {¶ 13} On appeal, Cooper presents three assignments of error, arguing that the trial court erred by finding (1) that the prenuptial agreement was invalid, (2) that certain personal property was owned by Nevada's estate, and (3) that Cooper's defense of the action was frivolous.
 The Prenuptial Agreement {¶ 14} In Gross v. Gross,[1] the Ohio Supreme Court set forth a three-part test to determine the enforceability of prenuptial agreements. To be enforceable, a prenuptial agreement (1) must be entered into freely without fraud, duress, coercion, or overreaching; (2) must be entered into with full disclosure of the nature, value, and extent of the prospective spouse's property; and (3) must not by its terms promote or encourage divorce or profiteering by divorce.[2]
 {¶ 15} A prenuptial agreement is a contract, and generally the law of contracts applies to a court's interpretation of the agreement[3] But a prenuptial agreement is a "special type of contract to which certain special rules apply."[4] When a prenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the party claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent.[5] The burden then shifts to the party challenging the agreement to prove fraud, duress, coercion, or overreaching.[6]
 {¶ 16} In reviewing a trial court's determination of the validity of a prenuptial agreement, an appellate court should uphold the trial court's findings if they are supported by competent evidence.[7] And an appellate court "will indulge all reasonable presumptions consistent with the record in favor of [the trial court's] decisions on questions of law."[8]
 {¶ 17} In this case, the prenuptial agreement provided that, upon either party's death, the surviving spouse waived any rights of election or inheritance in the deceased spouse's estate. There was no dispute that the prenuptial agreement provided Nevada disproportionately less than she would have otherwise received upon Chester's death.
 {¶ 18} Thus, the burden was on Cooper to demonstrate that Nevada had entered into the agreement with the benefit of full knowledge or disclosure of Chester's assets. In Gross, supra, the court held that a party could satisfy this element "either by the exhibiting of the attachment to the [agreement] of a listing of the assets of the parties to the agreement, or alternatively a showing that there had been a full disclosure by other means."[9]
 {¶ 19} In In re Mize,[10] this court upheld a trial court's invalidation of a prenuptial agreement where the document contained no description or listing of the properties held by either party, and made only vague references to "all monetary assets and real estate properties" and "personal bank accounts."[11] We held that "[w]hile the wife's testimony indicate[d] that she had some idea that decedent held various assets, it is also evident that such knowledge did not rise to the level of `full knowledge' and that there was not `full disclosure of the nature, extent and value' of these assets."[12]
 {¶ 20} In this case, the agreement signed by Chester and Nevada contained boilerplate language indicating that "both parties have made to each other a full and complete disclosure of the nature, extent, and probable value of all their property, estate and expectancy[.]" But the agreement contained no description or listing of the parties' properties or assets, and, as the trial court found, Cooper had put on no evidence to demonstrate that any such disclosure had occurred.
 {¶ 21} Because the trial court's determination that Cooper had failed to meet her burden on the disclosure requirement was supported by the record, we hold that the trial court properly found that the prenuptial agreement was invalid and unenforceable. We overrule the first assignment of error.
 Ownership of Personal Property {¶ 22} In her second assignment of error, Cooper argues that the trial court erred by finding that some of Chester's personal property was owned by Nevada's estate. Cooper contends that, in executing their prenuptial agreement, Chester and Nevada had relinquished their rights to the other's property. But here, where the trial court properly determined that the prenuptial agreement was not enforceable, no such waiver occurred. Consequently, we overrule Cooper's second assignment of error.
 Award of Attorney Fees {¶ 23} In her third assignment of error, Cooper argues that the trial court erred by finding that her defense of Gearheart's declaratory-judgment action was frivolous, pursuant to R.C. 2323.51.
 {¶ 24} R.C. 2323.51 allows the trial court to award fees to any party adversely affected by frivolous conduct.[13] The statute defines frivolous conduct as conduct by a party to a civil action that (1) serves merely to harass or maliciously injure another party to the action or is for another improper purpose, such as causing unnecessary delay or a needless increase in the cost of litigation; (2) is not warranted under existing law and cannot be supported by a good-faith argument for a modification or establishment of new law; (3) consists of allegations or other factual contentions that have no evidentiary support; or (4) consists of denials or factual contentions that are not warranted by the evidence.[14]
 {¶ 25} The standard of review applicable to the imposition of sanctions for frivolous conduct under R.C. 2323.51 depends on whether there are questions of law or of fact, or whether there are mixed questions of law and fact.[15] With respect to purely legal questions, an appellate court employs a de novo standard of review.[16] On the other hand, an appellate court should not disturb a trial court's findings of fact if the record contains competent, credible evidence to support the findings.[17] Finally, an appellate court reviews under an abuse-of-discretion standard a trial court's decision to award attorney fees on the basis that frivolous conduct has adversely affected a party.[18]
 {¶ 26} In this case, the trial court determined that Cooper's conduct was frivolous as defined by R.C. 2323.51(A)(2), because she had caused unnecessary delay and a needless increase in the cost of litigation, and had made allegations or factual contentions that were not supported by the evidence.
 {¶ 27} In support of its finding that Cooper's conduct had caused unnecessary delay and a needless increase in Gearheart's litigation costs, the court made several factual determinations. Specifically, the court found that, throughout the litigation, Cooper had unreasonably refused to identify those household items whose ownership she disputed. The court pointed to evidence of repeated attempts by Gearheart and her counsel to have Cooper identify those items that were truly in dispute. The court concluded that Cooper's insistence on denying Nevada's estate the statutory allowance was motivated by ill will. Because these factual findings were supported by competent, credible evidence, we will not disturb those findings on appeal.
 {¶ 28} But we do not similarly defer to the court's conclusions that Cooper had engaged in legally groundless frivolous conduct. To determine whether a claim is legally groundless, the test "is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim."[19]
 {¶ 29} As the party claiming the validity of the prenuptial agreement, Cooper had the burden to demonstrate that Nevada had entered into the agreement with the benefit of full knowledge or disclosure of Chester's assets. But the trial court determined that Cooper had presented no evidence to support her allegation that full disclosure had occurred. In support of its finding, the court pointed to Cooper's testimony that she had not witnessed a disclosure of assets by the parties, and to the lack of a description or listing of assets in the prenuptial agreement.
 {¶ 30} The court further found that Cooper had needlessly increased litigation costs by raising a third-party claim against Tepper "to secure a transfer of the case" from the probate division to the general division of the common pleas court, "only to dismiss this claim after the transfer of the case." At the hearing on attorney fees, Cooper presented the testimony of T. Steven Phillips, an attorney who specialized in probate matters and estate planning. Phillips testified that, in his opinion, Cooper had properly defended the prenuptial agreement. As executor of Chester's estate, Cooper was charged with the preservation and protection of the estate's assets, and was obligated to carry out the intent of the decedent as expressed in his will. Phillips further testified that the validity of a prenuptial agreement did not depend solely on whether a listing of assets was attached to the agreement.
 {¶ 31} Given Phillips' testimony, we cannot say that no reasonable lawyer would have argued that the prenuptial agreement was valid. Similarly, we cannot say that no reasonable lawyer would have argued that the lawyer who prepared the agreement bore responsibility for its errors if it was later determined to be unenforceable. Consequently, the trial court erred in determining that Cooper had engaged in legally groundless frivolous conduct.
 {¶ 32} Consequently, we sustain Cooper's third assignment of error to the extent that the trial court improperly based its award on legally groundless frivolous conduct. But we do not disturb the court's finding that Cooper's conduct in refusing to cooperate in the identification of ownership interests in personal property was frivolous because it had caused unnecessary delay and had needlessly increased Gearheart's litigation costs.
 Conclusion {¶ 33} Accordingly, we vacate the trial court's award of attorney fees and reverse the trial court's judgment to the extent that it found Cooper's conduct in defending the prenuptial agreement and pursuing a third-party malpractice claim to be legally groundless. We affirm the trial court's judgment in all other respects. We remand the case to the trial court for a determination of a reasonable amount of attorney fees in accordance with the foregoing.
Judgment accordingly.
[1] (1984), 11 Ohio St.3d 99, 464 N.E.2d 500.
[2] Id., paragraph two of the syllabus.
[3] Fletcher v. Fletcher, 68 Ohio St.3d 464, 467, 1994-Ohio-434,628 N.E.2d 1343.
[4] Id.
[5] Id.
[6] Id.
[7] Id. at 468, 1994-Ohio-434, 628 N.E.2d 1343.
[8] Id.
[9] Gross, supra, 11 Ohio St.3d at 105, 464 N.E.2d 500.
[10] (1992), 82 Ohio App.3d 97, 611 N.E.2d 460.
[11] Id. at 99, 611 N.E.2d 460.
[12] Id.
[13] Bryan v. Bryan, 161 Ohio App.3d 454, 2005-Ohio-2739,830 N.E.2d 1216, at ¶ 7.
[14] R.C. 2323.51(A)(2)(a).
[15] See Riston v. Butler, 149 Ohio App.3d 390, 2002-Ohio-2308,777 N.E.2d 857, at ¶ 25, citing Wiltberger v. Davis (1996),110 Ohio App.3d 46, 673 N.E.2d 628.
[16] Id. at ¶ 27.
[17] Wiltberger, supra, at 52, 673 N.E.2d 628.
[18] R.C. 2323.51(B)(1); Riston, supra, at ¶ 27; Wiltberger, supra, at 52, 673 N.E.2d 628.
[19] Riston, supra, at ¶ 36, citing Hickman v. Murray (Mar. 22, 1996), 2nd Dist. No. CA 15030.